The first case we have this morning is 21-1414 Doe v. Board of Regents. Would counsel for Appellant make the appearance and the end please. Good morning your honors. Michael McHale on behalf of Appellants and with me today is Peter Breen, co-counsel. May I please the court and just as a preliminary I'd like to reserve three minutes for rebuttal if possible. If possible is the operative phrase. Go ahead please. In August of last year the University of Colorado Anschutz School of Medicine adopted a religious exemption policy to its COVID-19 vaccine mandate that violated the first amendment in a manner rarely seen in modern times. The policy limited religious exemptions solely to those who possess quote a religious belief whose teachings are opposed to all immunizations. In other words if you belong to a religion you were out of luck. That policy violated the first amendment's clearest command against denominational discrimination and its promise that presumptively the state may not restrict practices because of their religious nature. The defendant university officials applied this policy pervasively and perniciously and all 17 plaintiffs were denied accommodations under the September 1st policy. And that's the policy that I thought you were talking about and that policy has been the plaintiff's position is that the September 24th policy looking at the evidence in totality is effectively applying the September 1st policy. So formally yes the university on September 24th updated its policy and made the new criteria whether one could perform remote work entirely. But looking at the evidence in its totality it's clear that there's at least a slight suspicion that what's really happening is a continued distrust of plaintiffs religious opposition to COVID vaccines. So and that's why looking at the record in its totality well what is it in the record that is concrete in the September 24th policy that would lead you to believe that it's implicitly applying the September 1st? That's the first question and I'll let you answer that and I'll move on. Right it's the way it's being applied primarily. So three of these plaintiffs work entirely off campus and were on their way to or actually received religious accommodations from those facilities and yet they're told by the university that they're an undue burden or an undue hardship that they're a danger somehow to these facilities that wanted them. But what really that gives rise to the inference that what's really going on is they just have the disconnect. That they're they're forced to work remotely is that what you're saying? The actually the plaintiffs who were healthcare are healthcare providers and were on their way to or received accommodations from the facilities they worked at to do in-person work even. Also the disconnect between the defendant's policy and the state board of health's policy. So the defendants say they enacted their policy in view of the state board of health but the state board of health allowed religious accommodations in person from the beginning and then in December actually encouraged them by allowing religious accommodations at facilities to count towards a vaccine right so that disconnect. Just to be clear you are this encounter took place under the September 24 policy. Is that right? Could you repeat the question? This encounter you're talking about in occurred under the September 24 policy not under the first policy is that correct? I'm not sure that's correct your honor. You ought to know which one just tell us. All 17 plaintiffs were denied accommodations. Was it after September 24? Initially no. No this encounter that you described was it after September 24? I'm not sure what encounter you're referring to your honor. You said they were on their way to they couldn't come. Jada one for example worked 60 miles away at children's hospital and she was on her way to an accommodation her supervisor said that she was a model. I understand that fact I'm just asking a simple question you could easily answer just yes or no and then move on. Did that encounter occur before or after September 24? It's not a hard question. You were discussing the one related to Jane Doe number one right? The one yeah well it did that your example that you were presenting to the court. I just want to know when it happened. Right Jane Doe one was before September 24th but then she was later told after September 24th that she would be an undue burden and Jane Doe 11 similarly was actually granted an accommodation by her facility more than 100 miles away from campus and then she was told after September 24th that she would be an undue burden but when there's that kind of over inclusivity and lukumi the Supreme Court was clear in lukumi when there's this over inclusivity when it's clear that the burden on religion isn't actually necessary to achieve the government's interests that gives rise to an inference of religious animus or religious non-neutrality so here Jane Doe 11 taking her example she actually received an accommodation from the place she worked at and yet she's still fired but clearly her facility didn't view her as a danger so that's the kind of over inclusivity that gives rise to an inference of here even just religious distrust and the Supreme Court standard is even a slight suspicion is raises the bar and requires heightened scrutiny that's because of go ahead. There was something you said when I spoke about the September 1st policy though that raises a question for me if the notion is that somehow they're implicitly applying some of the constraints of the September 1st policy through their implementation of the September 24th policy it still doesn't answer the question for me that I had in my mind of why we can't just deal with the September 24th policy because there it goes towards the application of this policy is being applied in an unconstitutional way my point being the September 1st policy in it seems to me is dead and gone I mean I don't understand even if your argument is that that sort of the spirit of it lives in the September 24th the application of September 24th policy well why don't we just strike down the September 24th wouldn't that give you what you want? So as to the mootness issue as to the mootness issue it doesn't necessarily as to Jane Doe 2 and Jane Doe 9 at the very least because they were not re-evaluated but even if you're right I would say absolutely the September 1st policy still informs the neutrality analysis of the September 24th. Well it may but it doesn't it doesn't mean that that September 1st policy still has vitality in terms of a vehicle for if you're saying that the September 24th policy they are sort of implementing sub-sillennial the September 1st policy through that well why wouldn't it give you full relief to strike down or to enjoin the September 24th policy in all its permutations? Well it's just a basic application of the court's Rezac opinion. No and well why is that I mean the point is it's one thing to say Rezac talked about lingering effects of and number one there were only two one policy in Rezac not two lingering effects of that policy well if you're saying that the lingering effects of the policy are at work through the implementation of the September 24th policy why can't we just deal with the September 24th policy? Even if we're wrong about that your an injunction against the September 24th policy would would provide significant relief here because of this disconnect these issues I'm raising about the manifest religious distrust that seems to be at least gives rise to the suspicion that triggers strict scrutiny and another key is that the September 24th policy is non-neutral even on its face with its explicit bar on religious exemptions for students. An accommodation request by a student turns entirely on the religious character of that request but that's what the Supreme Court in Trinity Lutheran and Espinosa and lately in Carson when the government's burdening someone because of their religious character that triggers restriction also that is another vestige that tethers the September 24th policy to the distrust that initially occurred. It led to the implementation of the September 1st policy but go ahead please. Just looking underneath the language is required in free exercise analysis under Lukumi to survey meticulously the facts and circumstances that led to so even if the September 1st policy as a formal as a formal matter is gone yes and even if you're correct about that the September 1st policy is still a key part of the history and then they also apply the September 1st policy in October so after September 24 supposedly everything had changed but they told Jane Doe one in briefing in response to our motion for a preliminary injunction that the reason she was still ineligible or a reason is because surely she must be aware as a abortion also at the same place they compared contrasted reviews to the Vatican's official teaching office this is under the September 24th policy allegedly there's a continuity that just continued and that gives rise to at least the suspicion that triggers strict scrutiny. For better or worse I'm going to allow a little liberality here on the time and so let me just ask one question because I want to make sure I know the answer to this related to I want to understand why RISAC would not be just limited to the prison context I mean what and because I mean the cases that it cited were prison cases and what struck me in RISAC is the prisoners had very little ability to change their circumstances in other words you know the lingering effects idea I'm still not an ADX well and and shouldn't that solve the problem but I'm in another facility well it was very difficult for them to avail themselves of some mechanism to get out from under that it seems to me that constraint is not necessarily a play here I just want your response to that and we can move on. My immediate thought is as to students the students are completely restricted now from even applying so they're under a kind of constraint that they can't get out from under but that's 24th policy right it's 24th policy right it's the lingering effects issue that there's a lingering effect there insofar as students are completely bound and unable categorically to apply so giving them some type of process at least to seek accommodation on equal terms with employees and students who could get they can see medical exceptions another sign of the disparity there that would be fitting I think within RISAC still that that's my thought but okay yeah so so much there's just manifest overwhelming evidence another another key piece of evidence is illogical and shifting explanation by the university for the September 24th policy so they said that the reason they needed it was because of an increase in COVID in September of last year but yet Chancellor Elliman and his declaration said they had granted zero religious exemptions under the September 1st policy and they've only acknowledged granting two medical exceptions so it's not clear what needed to change and become more restrictive but then before this court Chancellor Elliman in a supplemental declaration at the IPA stage said the reason they changed the September 1st policy was because it's vulnerable to litigation so which is it an increase in COVID even though they hadn't granted any accommodate religious accommodations in the September 1st or vulnerable to litigation this kind of shifting justification when there's an ongoing religious burden and a lot of healthcare professionals are completely terminated from providing health care even though they were some of them granted accommodations at their satellite facilities gives rise to the suspicion that what's actually happening is not an undue health hardship or anything but but a distrust of their religious beliefs and that and that distrust was manifest okay let me let me ask you a question it was my understanding that from your briefing that your view is that medical exemptions are comparable secular activity to religious exemptions is that right that's right well isn't there isn't there a distinction in that medical exemptions in the current shortage of medical personnel serves to facilitate treatment at the facilities i mean whereas the religious exemptions are not similarly situated are they this i'm not sure i agree because religious exemptions for healthcare workers to continue providing treatment would seem to serve the same interest would seem to serve the same interest i would say also brownwell the associate vice chancellor made it very clear that well the numbers are different though aren't aren't they in terms of people affected total exams so the first amendment justice gorsuch made this clear in his doctor a dissent which was a just an emergency appeal denial so it was a non-merits denial by the supreme court gorsuch so his point was that the first amendment requires a one-to-one analysis at the when you look at the general applicability analysis so it's each plaintiff as compared to another single plaintiff and then you can take the numbers into consideration at the strict scrutiny stage and that that seems to make sense also the district court said that the numbers game somehow tilted against students here because students could outnumber the amount of employees who seek exemptions and that would create the numbers disparity but obviously the employee number far outweighs the student number at the at the university but regardless i'd go back to the one-to-one analysis that's required and the university's been clear that that it's being unvaccinated and the possibility of spreading covet that's the harm they're trying to get at here and a medical exemptee undermines that interest to the same extent on a one-to-one basis as a religious exemptee and the september 24th policy just by itself is also non uh not generally applicable and this is important they allow taking that policy exclusively by itself students and employees to work alongside the unvaccinated at satellite at affiliate and non-affiliate sites so they allow the same kinds of harms working alongside the unvaccinated that they say these plaintiffs pose that's the exact kind of harm under did you raise the question of of uh of not sufficiently inclusive that is this under responsive to the problem in your briefs i i didn't pick that up as an as an emphasis argument of yours as a discrete separate argument and and you you argued that it was it was insufficient and that is a reason for what what what conclusions should we draw from the fact that this is insufficient to cover the entire problem i mean almost every piece of legislation has ever been passed is then 100 solve problems we deal in the practical and the and the pragmatic and not not the the perfect so uh i'm kind of at a loss to understand number one whether you really are asserting under inclusiveness uh in your briefs consistently and secondly why is that such a terrible problem here we did we did assert at four different levels of under inclusivity but in particular the fact that the defendants allow their employees and students to work with the unvaccinated at affiliate affiliate and even non-affiliate sites which poses the same type of risk to their interest that's the language intended if it could pose the same type of risk that triggers for scrutiny and the difference there but the other types of legislation honors this is first amendment religious uh religious exercise there's an ongoing substantial burden and the first amendment has a special solicitude in that situation it'll so we look at heightened scrutiny and under inclusivity in a way we don't necessarily do i see your time has expired but that answers my question thank you thank you so good morning your honors may it please the court my name is dr jacqueline rich frederick special assistant attorney general along with my co-counsel i represent the colorado at the university of colorado's medical campus as well as its employees and students who provided vital health care services to the most ill and at need coloradans this essential role was particularly acute during the 30 plus months in which the covet 19 pandemic has ravaged colorado sickening more than 1.6 million people and claiming nearly 14 000 lives the fall of 2021 was a particularly challenging time in response to rapidly increasing case counts the university promulgated its september 1st covet 19 vaccine policy three weeks later that policy was repealed and replaced with the september 24th policy the policy requires all employees and students of the university to take one of then three available vaccinations plaintiffs here are unlikely to survive the smith rational basis test for two reasons first the policy's purpose is rationally related to a legitimate governmental interest in short the goal is to save lives second the policy is both neutral and generally applicable no cu employee or student who is unvaccinated may come to the medical school campus or have contact with patients because plaintiffs have not met their burden to show that they are substantially likely to succeed on the merits the district court correctly denied their motion seeking preliminary injunctive relief when you say it's neutral the the frankly the the one clause that gives me pause in the september 24 policy uh uh is uh the phrase religious accommodations are not currently available to students or applicants was there a similar statement for medical or other kinds of accommodations also not being available to students and applicants no your honor because medical exemptions are available to students the only exceptions available under the policy are for all people medical exemptions for employees title 7 compliant religious exemptions so as i understand your argument the reason that i i guess that you acknowledge that religious religious prohibitions are are distinctive their religious people are being singled out but you are justifying it because title 7 allows that for students and applicants is that is that the is that the summary of your argument your honor as to the distinction between the treatment of students and employees students are not granted a religious accommodation under title 7 it doesn't provide for that university's policy is designed to provide all of the required exemptions while maximizing their and student life safety council why what a distinction between students and employees further that goal uh it would further both that goal as well as the two additional goals which are to limit transmission of the highly transmissible virus i take those as a given let's just take those goals those are a given why does your policy which does not let students apply for a religious exemption serve those goals it serves those goals because it maximizes the number of vaccinated persons on the campus and is that it it just keeps keep students from coming on campus there's no distinction actually between students and medical providers other than the as well as tethered to the fundamental distinction between a medical and a religious exemption so yes as i believe the court discussed with opposing counsel the record does reflect that the university received more than 200 religious exemption requests comparatively it received only 79 medical exemption requests of which only 11 were granted it is true that but is there a in their risks or their whatever else that they present as human beings know as to their job duties or potential interactions with the campus yes okay medical students at the medical campus have as part of their core training obligations to participate in clinicals that places them in in a situation where in order to progress through their education they have to be able to have those on person on campus in-person interactions through those clinical experiences that is analogous to for example jane doe's 110 and 11 who have at the heart of their obligations core duties to provide care for example as jane doe one does to critically ill infants in the NICU that is dissimilar from for example plaintiffs such as does four five six and seven all of whom were able to be successfully accommodated because their core job duties could be performed either off campus or remote on campus and so it is both in furtherance of what biden versus missouri recognized as the opposite of efficient and effective administration as well as for the numerical purpose that the court has recognized here today the school had no remote learning opportunities for students during the height of covid uh the school did work towards remote opportunities during covid however students are required to complete in-person clinical rotations as a core part of their curriculum there is a difference between for example a student who is at the end of their program of study and may have only coursework left that can be addressed remotely clinical experiences the treatment of patients must occur in the clinical setting and for that reason john does six and eight could not be accommodated because they were brand new students pursuing a medical certification as well as an anesthesiology credential and each of those require them to be an intimate contact during their clinical rotations with patients well the but the line that's drawn is employees and students there are surely some employees that are also in intimate contact with patients and they nevertheless may seek a religious exemption is that not right they may seek an exemption congruent with title 7 and the university accepts at face value though they could inquire under the law the sincerity of their belief under the september 24th policy and then turns to an analysis of whether they can be accommodated without undue hardship to the institution through that analysis the university has successfully accommodated 7 of 13 employee plaintiffs more than half oh that's more than half that's a good thing then why doesn't the university try to do that with students i mean if this is a numbers game this goes back to the fact we're talking about individual constitutional rights and burdening an individual constitutional rights so that you can in the potential for covid i'm not sure the constitution contemplates that and if so give me the best case you have that says it does numbers game i would say uh biden versus missouri's recognition that um the inclusion of a medical exemption to avoid sickening employees and students allergic to the vaccine demonstrates consistency with the university's goals in this case i would also point the court out of the second circuit which dealt with a policy that had in place likewise exemptions for employees not um for students and which uh the supreme court declined to um overturn well that doesn't tell us anything as you know it's supreme court if you're saying the supreme court denied cert i mean that doesn't tell us anything and so i it the as it relates to the students then what is the difference between a student getting a medical exemption and a student getting a religious exemption that doesn't have to do with the numbers at the end of the day your honor um the university is consistent that no person who is unvaccinated may be on campus engaging with in particular patient care regardless of whether the exemption that they seek is medical or religious in nature i thought who got who were able to interact with with patients did it did i okay let's let me reframe it you're telling me that there are no employees now who are interacting with patients who are under exemptions who are unvaccinated who are unvaccinated that is accurate your honor all right and and so in terms of students if those students have a medical exemption they are not permitted to interact with patients correct and under what circumstances is that possible what's the nature of an exemption if they can't interact with patients if they are able to be exempted from the requirement because taking the vaccine would cause them to themselves be ill contrary to the university's public health goals and the maintenance of hospital staffing levels then the analysis turns upon whether they can be accommodated in a manner that does not present an undue hardship to the institution if they would be required in order to complete their studies as a student in this case to interact with patients they could not do so safely without imposing undue hardship upon the institution because it would impose life safety risk to the critically ill patient well this filter of doing an undue hardship analysis that's not even permitted to students who are seeking religious exemptions i mean they aren't they don't even get in the game right they blanket are prohibited they are not eligible for a religious exemption under the september 24th policy that is correct however the case law i have i have two further questions also on this religious accommodation the word applicants does that what is applicants referred to does it applicants to students or applicants for employment i cannot say with certainty your honor without the policy in front of me um what it is modifying in in that particular sentence but i anticipate that it would be uh student applicants if it is addressing ability to access religious exemption all will we find the answer to that question in the record someplace this doesn't relate to job applicants but only student applicants i would commend to the court the affidavits declarations of chancellor element and that addresses as well as and that's going to be exhibit e there would also be relevant information exhibits b and c which are the attestations of those who precisely undertook the analyses for medical exemptees as well as religious requests for exemption which addresses the fact that they are treated likewise so so your position is that you think the record will support that applicants refers to people that are applying to be students is that correct uh that is what i would anticipate your honor all right then the second question i'm sorry that's not a yes though are you taking a position or you're not i i'm not sure where in the policy the word applicants with a specific question is with regard to which particular part of the policy in which the word applicant appears which is the way it's the sentence we've been focusing on the entire morning religious accommodations are not currently available to students or applicants that would refer to expressly students current students or status that does not include employees okay then my second question is we're familiar with the concept of severability and statutes if there's something unconstitutional in the statute we ask is it severable or isn't it that's a question that has to be decided i'm not familiar with the application of that concept for the policies of private people like the university that is non-statutory but could if we found that sentence questionable or unconstitutional could that be severed from the policy or would that require the entire policy to be stricken i think it could be severed i do not believe that it is unconstitutional your honor i didn't have my question though but is it the university's position that it could be severed from the policy and the rest of the policy kept in place or would it be that it's part of the policy and if that part is unconstitutional the whole policy falls i do not believe the whole policy falls your honor the policy is consistent um in aggregate with or without that single sentence in that it extends required medical exemptions to both employees and students and provides the opportunity for religious exemption congruent with title 7 to all employees it is thank you that answers yeah that's i don't want you to run up the last bit of your time thank you thank you your honor courts have consistently applied the rational basis test and found that vaccine policies support legitimate governmental interests that's doe and mills hoshuel clausen children's defense versus rutgers attunas versus uva bush versus fantasia and valdez a district of new mexico case which a um an iteration of this court affirmed the denial of motion seeking preliminary injunction and cited favorably language from the district court in that case stating that stemming the spread of covid is a compelling governmental interest the supreme court has gone further and observed the curbing the spread of covet 19 is unquestionably a diocese an unquestionably compelling interest is inherently legitimate for that reason the university's policy is a legitimate um a legitimate governmental exercise which passes rational basis it is also generally applicable and neutral well on the neutrality point what about the argument that we've heard this morning and in the briefs about uh i don't know the word animus was not used but you're citing lakumi the notion that there is this um at a minimum negative uh reaction by the university to those who seek to uh to exercise their religious rights as opposed to others how does that and and as these play out in terms of the individual does and they're seeking accommodations that is the inference that that the opposing counselor draws were that to be in fact what we see in the record that that's that's a game changer right i mean that alters the analysis of how we go about looking at this because it's not a facially neutral policy in which we're trying to discern burden but it's one in which you're as in lakumi targeting religion right if there was animus yes it would alter the analysis there is not animus in this instance the policy of september 24th is facially neutral it requires all employees and students to take the vaccine it is also neutral in that it was not put in place to discriminate the object of the policy is consistent to further public health maintain staffing levels and save patient lives that is non-discriminatory the policy was and to ensure non-discriminatory application of the policy itself as attested to by chancellor element let me under understand one thing about the amendment from adopting the september 24th policy when you adopted that what was the what was the university's express approach to the september 1st policy in other words did it declare it to be null and void one and and essentially disclaim the terms of that policy and how i mean how is that framed because i mean part of this argument about mootness is the ghost lives on of the september 1 policy well part of that ghost would live on arguably if there if the the university was essentially allowed it to float out there you know we've got a new policy but we're not saying that anything in that other policy was was wrong or or problematic or or that we won't do it again what what is in the record that speaks to what the university's policy is vis-a-vis the september 1st policy now that it's adopted the september 24th the answer to the court's first two questions are yes and yes this is not a haunting your honor the september 24th policy is a repeal and replacement chancellor element's declaration states that explicitly declarations b and c likewise uh clarify that a new group of individuals was brought in to assess application of the new policy as it regards evaluation for religious exemptions under the september 24th policy and has been consistently done now for more than a year the university forgoes inquiry and though permitted by law to do so into the society of someone's majority as soon as someone has asserted that they have a belief the university takes it at face value making no further inquiry and instead considers if the core job duties can be accommodated without an undue hardship council can i just stop you there so you're telling us that there was no inquiry into the sincerity of the belief none zero once september 24th happened there there was nothing that is correct your honor and the record reflects the same all currently employed individuals were re-evaluated under the september 24th policy which led to seven of the 13 employee plaintiffs being accommodated but you concede that there was uh i guess in your that there was you looked into the by the law the university did ask is the belief sincere the university is no longer engaged in that inquiry though the law does permit them to do so under the september 24th policy under the september 24th policy they do not make that okay but what then why i'm sorry so you made it before and you're not making it now what what was the justification for that ultimately the september 1st policy which is moot was drafted to uh be congruent with colorado state statute 25 4901 which is the school vaccine statute there was an additional inclusion of the word all which created a bit of an inartful implementation of that policy and as such and as reflected by chancellor eleman university rescinded they repealed and replaced that policy with the practice university welcomed employees to seek a religious exemption and takes them at their word as it regards their sincerely held faith beliefs and simply inquires into whether the job duties may be accommodated without undue hardship you continue to take the position i'm i'm sorry to keep pushing on this but you take the position that it would be fine to inquire into the sincerity of the beliefs it's just you've chosen not to the law allows um that inquiry okay thank you yes i wanted to return judge holmes briefly you would ask about lakumi and i wanted to address that expressly um we are not in that same space in that instance the policy at issue was promulgated after the church of santeria indicated that they intended to open a facility in hylia promptly thereafter the city promulgated this policy and included expressed language that was both connotatively and denotatively religious in making restrictions focusing upon ritual and sacrifice not so with the september 24th policy cu does not target religious conduct for distinctive treatment in a manner that does not advance its governmental interest it does not advance its governmental interest only against those with a religion's motivation i am finding this argument incredibly interesting but given given my generosity i think it's going to have to come to a clue conclusion soon because i'm going to give council a little bit of rebuttal time so if there's anything remaining that you're burning to tell me tell the court and tell us otherwise please conclude thank you your honor you've been very gracious because the university september 24th policy furthers the university's legitimate governmental interests and is both neutral and generally applicable it readily passes the smith national basis review therefore the university respect the request that this court affirmed the district court's denial of the first preliminary injunction as moot and likewise affirmed the district court's denial of the second preliminary injunction for want of failure to satisfy the four-part test predicate to the thank you um let's go with three minutes and it will be a hard three minutes thank you your honor so the government can take into consideration sincerity but it cannot consider legitimacy as masterpiece cake shop said the government may not presume the illegitimacy of one's religious beliefs but that's exactly what happened under the under the september first policy and looking at the evidence in its totality and i'd point you to the new hope family services decision in the second circuit which had a actually undertook a similar analysis there was a motion to dismiss stage but the court reversed a grant motion dismiss and the district court then applied the same analysis to grant a preliminary injunction by non-neutrality based on the facts and circumstances also failure to disavow so the government here still fails to legitimacy they undertook under the september 1st policy so masterpiece cake shop said the commission civil rights commissioners failure to disavow and even the government's arguments in their briefs failure to disavow their initial overt discrimination was evidence uh evidence of suspicion that there was something more afoot here than just uh you know jack phillips supposed discrimination there was a hostility towards his religion and even distrust triggers the high scrutiny and so we're talking lukumi in making priming this argument right okay also i'd say masterpiece also in axon flynn this court's decision in axon flynn there there was a neutral rule you got to hear adhere to the script and the mormon students said i do not want to take god's name in vain i don't want to say some cuss words not all customers but some and this court granted it was summary judgment stage but it said that that's evidence that raises concern and requires an analysis whether there's something more than the stated interest and we have here it can't be overstated how important the initial september 1st policy is to the analysis it was the discrimination was overt this is an extremely unique case they put the discrimination in writing and then they they applied it perniciously they sent out this mass august 26 email impersonal by the vaccine verify anonymous no one knows who they are there was no accountability you only had five days to comply no opportunity to appeal they told john doe one that they the university had discovered some unrelated buddhist university that allegedly had inconsistent beliefs with his buddhist beliefs jane jane no one they said we sincerely hope you reconsider your beliefs that's a masterpiece cake shop and in axon flynn the government officials wanted expressing wanted the individuals to reevaluate their values or compromise on their values that was evidence of something more than just a neutral policy we had that in spades in spades here also the idea that they culminated the remote workers title 7 just by analogy says you can't even segregate employees in a way that would even tend to deprive them of employment opportunities it based on their religion so the remote employees here are seeking more than that but just also those employees were already put in remote positions under the september 1st policy chancellor element said that some work was rendered remote under the september 1st policy for business continuity purposes and would be for the foreseeable future nothing changed and certainly the in-person care employees are similarly situated to the in-person that the university already allows at affiliate and non-affiliate sites so he asked this court to reverse the district court and remand with instructions to grant a preliminary injunction thank you for the fine arguments cases submitted